# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
December 14, 2023
Lyle W. Cayce
Clerk

No. 21-20312

Utah Retirement Systems,

            *Plaintiff—Appellant*,

versus

Mark McCollum; Christoph Bausch; Karl Blanchard; Krishna Shivram; Stuart Fraser; Douglas M. Mills; Weatherford International, P.L.C.; Bernard Duroc-Danner,

            *Defendants—Appellees*.

_____

Appeal from the United States District Court
for the Southern District of Texas
No. 4:19-CV-3363

_____

Before Dennis, Southwick, and Wilson, *Circuit Judges*.

Per Curiam:*

 This appeal stems from a district court's dismissal of a securities fraud class action lawsuit. Because we find Plaintiff inadequately pleaded the element of scienter, we AFFIRM.

___

* This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 21-20312

## I. Factual Background

The alleged facts are complex and span several years.[1] We therefore do not repeat the allegations in their entirety, though we have carefully considered them.

Weatherford International, P.L.C. ("Weatherford") is a publicly traded oilfield service company that was founded in 1998. By October 2016, Weatherford had over $7.1 billion in debt and endured seven consecutive quarterly revenue declines. The market began to speculate that Weatherford might be on the brink of bankruptcy. Around that time, Weatherford publicly ushered in a series of cost-cutting measures, including layoffs and closures of several manufacturing plants, which were intended to make Weatherford profitable again.

Despite those efforts, Weatherford's debt still continued to grow. So, on July 28, 2017, then-CEO Mark McCollum introduced a formal "Transformation Plan," encompassing over 1,500 cost-cutting measures even more drastic than those previously announced. The initiatives included ramping up workforce reductions, consolidating facilities, centralizing support functions, and regrouping eight product lines into four business units. The Transformation Plan also called for Weatherford to divest business units that were "not critical to [its] strategy going forward."

Defendants then started a campaign to sell the Transformation Plan to investors. Over the course of approximately three years, Weatherford attempted to implement the Transformation Plan. Relevant to this appeal, former Weatherford employees ("FEs") allege that, from October 26, 2016, through May 10, 2019 (the "Class Period"), "Defendants knew all

---

[1] To the extent we recite the facts, they are as alleged in the complaint. *See Neiman v. Bulmahn*, 854 F.3d 741, 746 (5th Cir. 2017).

along that the Transformation Plan was insufficient to dig Weatherford out of its debt." By November 2018, Weatherford hired a restructuring advisor and by December 31, 2018, the Company retained restructuring counsel. On February 1, 2019, when an analyst asked if Weatherford was considering bankruptcy, McCollum responded, "I don't waste a lot of time thinking or planning how to fail," and that "the actions that we can take is [sic] continuing to execute the [T]ransformation [P]lan and do that quarter in and quarter out and continue to improve the profitability, which ultimately will drive the cash flow of this organization and improve our credit metrics." Weatherford retained additional restructuring counsel in April 2019.

On May 10, 2019, Weatherford issued a press release announcing that the company had executed a restructuring support agreement with a group of its senior noteholders and was seeking Chapter 11 bankruptcy protection since it "still face[d] a high level of debt" and "w[ould] not be able to generate sufficient liquidity to service all of its debt." By all accounts, the Transformation Plan had failed. On May 13, 2019, the New York Stock Exchange suspended trading in Weatherford's stock, and on May 14, 2019, Weatherford began trading on the Over-the-Counter market. That same day, Weatherford's share price plummeted more than 86%, closing at $0.05 per share. Weatherford initiated bankruptcy proceedings on July 1, 2019, implemented the restructuring support agreement negotiated during the Class Period, and gave all ownership in Weatherford to noteholders and certain Weatherford management, including the individual defendants—leaving only 1% to existing shareholders.

This lawsuit was initiated. The lead Plaintiff, Utah Retirement Systems, brings claims on behalf of purchasers of the common stock of Weatherford during the Class Period. Defendants are Weatherford and a handful of its former executives. Plaintiff alleges that Defendants, in

violation of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and SEC Rule 10-b(5), made materially false and misleading representations and omissions about Weatherford's "Transformation Plan." The district court granted Weatherford's motion to dismiss Plaintiff's claims with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6), which is now on appeal.

## II. Standards of Review

"We review a district court's dismissal of federal securities law claims under Rule 12(b)(6) de novo." *Owens v. Jastrow*, 789 F.3d 529, 535 (5th Cir. 2015). "A 'complaint will survive a Rule 12(b)(6) motion to dismiss if, accepting its factual allegations as true, the complaint plausibly states a claim for relief.'" *Okla. Firefighters Pension & Ret. Sys. v. Six Flags Ent. Co.*, 58 F.4th 195, 206 (5th Cir. 2023) (quoting *Loc. 731 I.B. of T. Excavators & Pavers Pension Tr. Fund v. Diodes, Inc.*, 810 F.3d 951, 956 (5th Cir. 2016)). We will accept "all well-pleaded facts as true and view[] those facts in the light most favorable to the plaintiff[]." *Moffett v. Bryant*, 751 F.3d 323, 325 (5th Cir. 2014) (internal quotation marks and citation omitted).

Under Federal Rule of Civil Procedure 9(b), allegations of fraud must be pleaded "with particularity" as to "the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Particularity "necessarily differs with the facts of each case," but it generally requires a plaintiff to allege "the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what [they] obtained thereby." *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067-68 (5th Cir. 1994) (internal quotation marks and citation omitted). Under Rule 9(b), however, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

Securities fraud claims brought by private litigants, like the ones here, are also subject to the pleading requirements imposed by the Private Securities Litigation Reform Act ("PSLRA"). *See* 15 U.S.C. § 78u-4. The PSLRA "was enacted in response to an increase in securities fraud lawsuits perceived as frivolous." *Newby v. Enron Corp.*, 338 F.3d 467, 471 (5th Cir. 2003). It requires a plaintiff to "identify each allegedly misleading statement with particularity and explain why it is misleading." *Owens*, 789 F.3d at 535 (internal quotation marks and citation omitted). Moreover, "if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1)(B). "At a minimum, the PSLRA pleading standard incorporates the 'who, what, when, where, and how' requirements of Rule 9(b)." *Owens*, 789 F.3d at 535 (quoting *ABC Arbitrage Plaintiffs Grp. v. Tchuruk*, 291 F.3d 336, 349–50 (5th Cir. 2002)). Thus, pleadings that fail "to specify the alleged fraudulent statements, the speaker, when and where the statements were made, and why they are fraudulent" must be dismissed. *Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 287 (5th Cir. 2006).

### III. Discussion

Plaintiff's complaint alleges that Defendants violated Section 10(b) of the Exchange Act and SEC Rule 10b-5. "To state a Section 10(b) and Rule 10b-5 claim, a plaintiff must allege: '(1) a material misrepresentation or omission; *(2) scienter (a wrongful state of mind)*; (3) a connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) a causal connection between the material misrepresentation and the loss.'" *Okla. Firefighters Pension & Ret. Sys.*, 58 F.4th at 206 (further internal quotations omitted) (emphasis added) (quoting *Mun. Emps.' Ret. Sys. of Mich. v. Pier 1 Imports, Inc.*, 935 F.3d 424, 429 (5th Cir. 2019)). We focus our analysis on whether Plaintiff sufficiently pleaded scienter because our

adverse finding is dispositive of this appeal.

\* \* \*

The PSLRA imposes an exacting standard for pleading intent in the securities fraud context. It requires, "in any private action . . . [where] the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind," that a complaint "state with particularity facts giving rise to a *strong inference* that the defendant acted with" scienter "with respect to each act or omission alleged." 15 U.S.C. § 78u-4(b)(2)(A) (emphasis added). "The required state of mind [for scienter] is an intent to deceive, manipulate, or defraud or severe recklessness." *Ind. Elec. Workers' Pension Tr. Fund IBEW v. Shaw Grp., Inc.*, 537 F.3d 527, 533 (5th Cir. 2008) (internal quotations omitted).

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) controls our review of Plaintiff's scienter arguments. In that case, the Supreme Court saw its task as one "to prescribe a workable construction of the strong inference standard, a reading geared to the PSLRA's twin goals: to curb frivolous, lawyer-driven litigation, while preserving investors' ability to recover on meritorious claims." *Id.* at 322 (internal citations omitted). The Supreme Court established the following prescriptions:

> *First*, faced with a Rule 12(b)(6) motion to dismiss a § 10(b) action, courts must, as with any motion to dismiss for failure to plead a claim on which relief can be granted, accept all factual allegations in the complaint as true. . . . *Second*, . . . [t]he inquiry is whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard. *Third*, in determining whether the pleaded facts give rise to a "strong" inference of scienter, the court must take into account plausible opposing inferences.

*Id.* at 322-23 (citations omitted). "Congress required plaintiffs to plead with

particularity facts that give rise to a 'strong'—*i.e.*, a powerful or cogent—inference." *Id.* at 323. "To determine whether the plaintiff has alleged facts that give rise to the requisite 'strong inference' of scienter, a court must consider plausible, nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff." *Id.* at 323-24. All told, "the reviewing court must ask: When the allegations are accepted as true and taken collectively, would a reasonable person deem the inference of scienter at least as strong as any opposing inference?" *Id.* at 326.

Applying the *Tellabs* framework to the present case, it is evident that Plaintiff has not alleged facts (as opposed to conclusions not based on pleaded facts) from which a reasonable person could draw a "strong inference" that Defendants spoke or acted with scienter to mislead investors during the Class Period. Chiseled to its core, Plaintiff's scienter theory is that Defendants "knew" throughout the Class Period that bankruptcy was "inevitable." When taken as a whole, however, Plaintiff's proposed inference is not "at least as compelling as any opposing inference of nonfraudulent intent"—e.g., that Weatherford was "trying to fix its issues but was continually stymied by a weak oil market." *Id.* at 314. Plaintiff has failed to sufficiently plead facts from which a reasonable person could draw a strong inference that Defendants acted with the intent to deceive, manipulate, or defraud or with severe recklessness.

Additionally, we consider Plaintiff's motive argument because, depending on the circumstances arising from the underlying facts pleaded, motive and opportunity may be relevant to a showing of scienter "and 'may, on occasion, rise to the level of creating a strong inference of reckless or knowing conduct.'" *Nathenson v. Zonagen Inc.*, 267 F.3d 400, 410-11 (5th Cir. 2001) (quoting *In re Comshare, Inc. Sec. Litig.*, 183 F.3d 542, 551 (6th Cir. 1999)). Motive alone, however, is generally insufficient to plead a strong inference of scienter under the PSLRA. *Id.* at 410-12.

Here, the asserted motive argument is meritless. Plaintiff argues that Defendants were motivated and incentivized throughout the Class Period to misrepresent to investors the true state of Weatherford's financial situation and to delay the "inevitable" filing of bankruptcy because Defendants needed time to negotiate a Management Incentive Plan ("MIP") under which management could receive up to 5% ownership in the reorganized company. But we have held "incentive compensation 'can hardly be the basis on which an allegation of fraud is predicated'" because "the vast majority of corporate executives" receive this type of compensation. *Ind. Elec. Workers*, 537 F.3d at 544 (quoting *Tuchman*, 14 F.3d at 1068). However, in a limited set of circumstances—when the potential bonus is extremely high and other allegations support an inference of scienter— performance-based compensation can establish motive. *See Barrie v. Intervoice-Brite, Inc.*, 397 F.3d 249, 261 (5th Cir. 2005). Here, the MIP merely gave the new board the *discretion* to award equity compensation of up to 5% but did not guarantee any concrete benefit to anyone. Further, the complaint lacks factual allegations that tie together Plaintiff's pleaded fraud theory with the asserted motive. Plaintiff argues that Defendants needed to delay bankruptcy to negotiate the MIP, but Plaintiff does not allege how the MIP would have been different—or not existed at all—had the company gone under sooner. The district court therefore did not err when it dismissed Plaintiff's claims for failure to allege facts from which a reasonable person could draw a strong inference that Defendants spoke and acted with scienter to mislead investors during the Class Period.[2]

---

[2] "Control person liability is secondary only and cannot exist in the absence of a primary violation." *Southland Sec. Corp. v. INSpire Ins. Sols.*, 365 F.3d 353, 383 (5th Cir. 2004) (citing *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1021 n.8 (5th Cir. 1996)). Because Plaintiff insufficiently pleaded a primary violation, its Section 20(a) claims against the individual defendants must fail. Accordingly, we affirm the district court's

No. 21-20312

## IV. Conclusion

For these reasons, we AFFIRM the judgment of the district court.

---

dismissal of those claims too.